J-S18006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ASHLEY REGINA MOWERY :
:
Appellant : No. 1754 MDA 2019

Appeal from the PCRA Order Entered October 3, 2019,
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0007228-2015.

BEFORE: KUNSELMAN, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED MAY 22, 2020**

Ashley Regina Mowery appeals from the order denying her petition filed

pursuant to the Post Conviction Relief Act. 42 Pa.C.S.A. §§ 9541-9546. We

affirm.

The pertinent facts and procedural history, as gleaned from the certified

record, are as follows: On October 6, 2015, the Commonwealth arrested and

charged Mowery with aggravated assault and attempted homicide. The

charges were filed after Mowery shot Montez Perry, her then-boyfriend, in the

stomach during an argument. On March 3, 2016, Mowery entered a

negotiated guilty plea to aggravated assault in exchange for the

Commonwealth's withdrawal of the attempted homicide charge. Pursuant to

_____

[*] Former Justice specially assigned to the Superior Court.

the plea agreement, the trial court imposed a sentence of four to twelve years of imprisonment.  Mowery did not file a direct appeal.

On November 30, 2016, Mowery filed a *pro se* PCRA petition.  The PCRA court appointed counsel.  On April 20, 2017, PCRA counsel filed a "no-merit" letter and petition for leave to withdraw pursuant to the dictates of ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  Mowery did not file a response to PCRA counsel's filings, but did file several *pro se* motions for sentence modification, which the PCRA court declined to entertain, given the pendency of Mowery's PCRA petition.

By memorandum opinion and order filed on August 23, 2017, the PCRA court issued a Pa.R.Crim. 907 notice of its intention to dismiss Mowery's PCRA petition without a hearing.  In doing so, the court expressly agreed with PCRA counsel's conclusion that Mowery "failed to demonstrate that her guilty plea was the result of any manifest injustice or less than knowing and intelligent for any reason and that no basis existed for relief."  PCRA Court Opinion, 8/28/19, at 2.  That same day, the PCRA court filed an order granting PCRA counsel's petition to withdraw.  Mowery did not file a response.

On October 9, 2017, PCRA counsel filed a "Petition to Preserve Jurisdiction Pursuant to Newly Discovered Evidence" pursuant to 42 Pa.C.S.A. section 9543(a)(2)(vi).  The Commonwealth filed a response.  By opinion and order filed on December 15, 2017, the PCRA court concluded that Mowery's

filing constituted an untimely second PCRA petition, and, therefore, denied relief.

Mowery filed a timely appeal. On July 10, 2018, this Court vacated the PCRA court's December 15, 2017 order denying post-conviction relief, and remanded with the instructions to hold an evidentiary hearing regarding Mowery's newly discovered evidence claim. At that hearing, the victim, Mr. Perry, recanted his prior statements to police. Mowery also testified briefly. By opinion and order filed August 28, 2019, the PCRA court rejected Mowery's newly discovered evidence claim and reiterated its prior conclusion that Mowery knowingly and intelligently entered her guilty plea. The PCRA court therefore issued Rule 907 notice of its intention to dismiss Mowery's PCRA petition. Mowery filed a response. By order entered October 3, 2019, the PCRA court dismissed Mowery's PCRA petition. This timely appeal followed. Both Mowery and the PCRA court have complied with Pa.R.A.P. 1925.

Mowery now raises the following issue on appeal:

1. Whether the [PCRA] court abused its discretion when it denied [Mowery's PCRA petition] based on newly discovered evidence pursuant to 42 Pa.C.S. § 9543 (a)(2)(vi)?

Mowery's Brief at 7 (excess capitalization and emphasis omitted).

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings

in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92

(Pa. Super. 2013) (citations omitted).

In her issue, Mowery claims that the PCRA court abused its discretion in

dismissing her PCRA petition based upon evidence that she recently

discovered the victim of her crime, Mr. Perry, had recanted his statement that

Mowery shot him. To address this claim, we first note the test applied to after-

discovered evidence under the PCRA. When discussing the test in the context

of a PCRA appeal, our Supreme Court recently summarized:

> [W]e have viewed this analysis in criminal cases as
> comprising four distinct requirements, each of which, if
> unproven by the petitioner, is fatal to the request for a new
> trial. As stated, the four-part test requires the petitioner to
> demonstrate the new evidence: (1) could not have been
> obtained prior to the conclusion of trial by the exercise of
> reasonable diligence; (2) is not merely corroborative or
> cumulative; (3) will not be used solely to impeach the
> credibility of a witness; and (4) would likely result in a
> different verdict if a new trial were granted. The test applies
> with full force to claims arising under Section 9543(a)(2)(vi)
> of the PCRA. In addition, we have held the proposed new
> evidence must be producible and admissible.

***Commonwealth v. Small***, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

Credibility determinations are an integral part of determining whether a

PCRA petitioner has presented after-discovered evidence that would entitle

him to a new trial. ***See***, ***e.g.***, ***Small***, 189 A.3d at 978-79 (remanding for the

PCRA court to make relevant credibility determinations). We have stated,

prior to granting a new trial based on after-discovered evidence, "a court must

assess whether the alleged after-discovered evidence is of such a nature and

character that it would likely compel a different verdict if a new trial is granted." ***Commonwealth v. Padillas***, 997 A.2d 356, 365 (Pa. Super. 2010). "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." ***Id.***

Here, although Mowery's conviction resulted from a guilty plea, rather than a trial, the analysis of her claim remains the same. Generally, a defendant who has pled guilty "waives all claims and defenses other than those sounding in the jurisdiction of the court, the validity of the plea, and what has been termed as the 'legality' of the sentence imposed." ***Commonwealth v. Heaster***, 171 A.3d 268, 271 (Pa. Super. 2017). However, our Supreme Court has held that "any after-discovered evidence [that] would justify a new trial would also entitle a defendant to withdraw [her] guilty plea." ***Commonwealth v. Peoples***, 319 A.2d 679, 681 (Pa. 1974).

In denying Mowery's claim, the PCRA court first noted the basis upon which Mowery based her claim:

> [Mowery] asserts the claim of after-discovered evidence in the form of a recantation statement of her then[-]boyfriend, Montez Perry. In his August 3, 2017 letter to [PCRA counsel], Mr. Perry sought to recant the statement upon which [Mowery] was charged, that [Mowery] shot him. In his letter, [Mr.] Perry stated that [Mowery] "should not be locked up for shooting [him] because she is not the person who shot [him]." Mr. Perry requested that [PCRA

> counsel] "do [him] a favor and tell her that I'm sorry and I love her so much."

PCRA Court Opinion, 8/28/19, at 4 (citation omitted).

The PCRA court then summarized Mr. Perry's testimony from the PCRA hearing on May 29, 2019. The court first noted that Mr. Perry read into the record the following letter that he had sent to the Dauphin County District Attorney's Office on July 20, 2017:

> My name is Montez Perry and I am writing you this letter in regards to a woman by the name of [Mowery] who was wrongly convicted in the courts of Dauphin County from a false statement I gave the Harrisburg City detective about me being shot in late 2015. I told the detective when I spoke to him in the hospital that [Mowery] was the one who shot me but she didn't. I only told the detective that because while I was in the hospital [Mowery], my girlfriend and soon to be wife, did not come and visit me on the first day the hospital allowed me to have visitation from family and friends. I felt as though she was supposed to be the first one at my bedside at the time. So with that being said, when the detective came and spoke with me I made up a story about her being the one who shot me. She, [Mowery,] is not the one who pulled the trigger on me the day I was shot.
>
> I am writing to do whatsoever I have to do to make this matter correct. I am so sorry for the inconvenience on my behalf but my soul and conscience won't let me rest peacefully unless I make this right. Please know that I was not, I was not forced nor threatened to write this letter. My heart is simply weighing heavy because of what I did and I am not able to live, basically live with myself because of it. Please take this matter serious (*sic*)[.] This is somebody's life I destroyed and it will destroy mine if things aren't corrected as soon as possible. I will accept any punishment that comes with my wrongdoing in this matter. I look forward from hearing from you soon.

PCRA Court Opinion, 8/28/19, at 4 (citing N.T., 5/29/19, at 11-12).

The PCRA court further noted, that Mr. Perry testified he sent this same letter to Dauphin County's Chief Public Defender. *Id.* at 5. Finally, the PCRA court stated:

> [Mr.] Perry testified at the evidentiary hearing that he did not know who shot him because whomever pulled the trigger was wearing a ski mask. He testified that he first recanted his statement in July of 2017 because the matter was weighing on his conscience. [Mr.] Perry testified that he was unaware that [Mowery] pled guilty.

*Id.* (citations omitted).

Considering Mr. Perry's testimony as summarized above, in conjunction with Mowery's own statements during her guilty plea colloquy and at sentencing, the PCRA court concluded that "[t]he pleadings and evidence fail to prove a basis for relief based upon the existence of after-discovered evidence." *Id.* The PCRA court explained that Mowery did not sustain her burden of proof for a number of reasons. The court first stated why it found Mowery failed to exercise due diligence in discovering Mr. Perry's recantation:

> First, the record is devoid of evidence that [Mowery] could not have, by the exercise of due diligence prior to the entry of her guilty plea, obtained information that someone else shot Mr. Perry. [Mowery] would have us accept that she did not know, in spite of her guilty plea, that she did not shoot [Mr.] Perry and that she could not have learned of this information until 2017. "[A] defendant who fails to question or investigate an obvious, available source of information, cannot later claim evidence from that source constitutes newly discovered evidence." *Commonwealth v. Padillas*, [997 A.2d 356, 364 (Pa. Super. 2010) (citation omitted)]. The concept of reasonable diligence is particularly relevant where the defendant fails to investigate or question a potential witness with whom he has a close, amicable

- 7 -

relationship. ***Padillas***, [997 A.2d 356, 364 (Pa. Super. 2010) (citing ***Commonwealth v. Parker***, 494 Pa. 196, 200, 431 A.2d 216, 218 (1981) (holding defendant did not exercise reasonable diligence where he failed to learn before or during trial of girlfriend's confession to murder for which he was on trial)).

PCRA Court Opinion, 8/2/19, at 5.

The PCRA court also found that Mr. Perry's recantation testimony served "solely as an attempt to impeach the credibility of [Mowery's] own statements" to the trial court both during her guilty plea and at sentencing. The court noted the following exchange during Mowery's oral guilty plea colloquy:

> [The prosecutor]: Factually in this case, on October 6, 2015, Harrisburg City Police Department did respond to the shooting scene. Eventually they made contact with the victim at the hospital, Montez Perry, who was [Mowery's] ex-boyfriend. He did relate to them that [in] the morning hours of October 6, 2015, [he] and [Mowery] did get into an altercation regarding their argument [sic]. He stated that during the argument, [Mowery] went upstairs, came down with a gun and shot him one time in the stomach. [Mowery] did then leave. He was laying in the hallway of the residence yelling for help, and a neighbor came to get him and contacted police. He did have to have surgery and had serious bodily injury in relation to the one shot to the stomach. Based upon these facts ma'am, you were charged with one count of aggravated assault. To that charge, how do you plead?
>
> [Mowery]: Guilty. But he doesn't have serious bodily injury, but guilty.
>
> [THE COURT]: Ma'am, you understand that it's presumed that when you use a firearm and strike a vital portion of someone's body, which was done here, that it's presumed that causes serious bodily injury?
>
> [Mowery]: Yes, I know that.
>
> [THE COURT]: [All] right. Do you plead guilty or not guilty?

[Mowery]: Guilty.

PCRA Court Opinion, 8/28/19, at 6 (citing N.T., 3/3/16, at 3-5).

Mowery pled guilty and the trial court sentenced her on the same day. The PCRA court could not reconcile Mowery's expression of remorse at the time of sentencing with Mr. Perry's recantation. The court cited the following comments:

> [Mowery]: Like, I deeply apologize for what I did. Like, I did it because it was in the midst of a domestic violence fight and that was, like, I really couldn't do anything. I tried to call – I called the police before all of this even happened. I went to the police station and tried to file a report about domestic violence.

*Id.* (citing N.T., 3/3/16, at 6) (emphasis omitted).

Finally, the PCRA court concluded that Mowery could not establish the fourth prong of the after-discovered evidence test as reiterated in *Small*, *supra*. The court explained:

> [Mr.] Perry's statement would not compel us to reach a different result as to our acceptance of [Mowery's] guilty plea. In making the determination as to whether after-discovered evidence is of such nature and character to compel a different verdict, or in the instant case, acceptance of the guilty plea, we must consider the integrity of [the] alleged after discovered evidence, *Padillas*, [997 A.2d at 363 (citation omitted)]. "In making that determination, a court should consider . . . the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Id.* [(citation omitted)]. Neither Perry nor [Mowery] offer any substantive evidence as to who did the shooting or even whether [Mowery] was present when the unknown person shot [Mr.] Perry. Further, [Mr.] Perry's August 2017 letter to [PCRA counsel] indicates that [Mr.] Perry remained romantically interested in [Mowery].

> [Perry's] statement lacks evidentiary value at the issue
> of who, if not [Mowery] shot [him].

PCRA Court Opinion, 8/28/19, at 7.

Summarizing the above, the PCRA court concluded that Mowery could not meet her burden of establishing she was entitled to post-conviction relief based upon Mr. Perry's recantation. Our review of the record supports the PCRA court's conclusion.

Mowery's claims that the PCRA court abused its discretion in reaching this result are meritless. She asserts that she "demonstrated that the newly discovered evidence is exculpatory and would result in a different verdict." Mowery's Brief at 12. We cannot agree.

In support of her claim, Mowery asserts that she demonstrated due diligence in obtaining Mr. Perry's recantation because Mr. Perry "maintained his original statements [to police] until" he wrote his August 2017 letter to PCRA counsel, "and therefore, this evidence could not have been discovered until Mr. Perry disclosed these new statements." Mowery's Brief at 13. She further contends, without citation to case authority, that "[t]he evidence is not merely to impeach the credibility of a witness." *Id.* at 14. Mowery asserts that "[t]hese new statements from Mr. Perry would not be used to impeach the victim [sic] but would go to show that [she] is in fact innocent of the crimes charged." *Id.* According to Mowery, "if Mr. Perry is currently stating that [she] was not the initial aggressor this would completely change [her] decision to either proceed to trial or even change the position of the

Commonwealth regarding this matter." ***Id.*** Finally, Mowery asserts that the PCRA court "failed to distinguish that the recantation evidence is not from co-defendants, but from the victim." ***Id.***

Mowery's claim do not entitle her to relief. We first note how we, as an appellate court, should consider a claim involving recanted testimony:

> The well-established rule is that an appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion. . . . Recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. There is no less reliable form of proof, especially when it involves and admission of perjury.

***Commonwealth v. Loner***, 836 A.2d 125, 135 (Pa. Super. 2003) (*en banc*) (citation omitted).

Mowery does not adequately develop how Mr. Perry's recantation could be used for any purpose other than to "impeach" his prior statement to police that Mowery shot him. ***See Commonwealth v. Pi Delta Psi, Inc.***, 211 A.3d 875-884-85 (Pa. Super. 2019) (reiterating that when an appellant's argument is undeveloped, we will deem the issue waived). The same is true with regard to Mowery's claim that the trial court did not distinguish between recantation by victim rather than a co-defendant. Mowery also fails to develop how recantation by the victim should be assessed differently than when a co-defendant recants. ***See Loner***, 836 A.2d at 135 142 (discussing cases in which sex offense victim recanted her trial testimony before concluding that

PCRA court did not clearly abuse its discretion in denying the appellant a new trial based upon his daughter's subsequent recantation of her trial testimony). This is especially true in this case, given Mowery's statements during her guilty plea colloquy and at sentencing.

Finally, we are unable to find anywhere in the certified record (and Mowery cites none) where Mr. Perry stated that he was the initial aggressor during their argument. Indeed, as mentioned above, Mr. Perry averred that an unknown assailant in a ski mask shot him.

In sum, because the PCRA court did not err in concluding that Mr. Perry's recantation was not of such a nature and character that it would compel a different result, **Padillas**, **supra**, Mowery's issue fails, and we affirm the PCRA court's order denying her post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/22/2020